UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA MORALES, | No. 2:17-cv-02246 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born April 17, 1974, applied on January 8, 2015 for SSI and disability insurance benefits (DIB), alleging disability beginning December 29, 2014. Administrative Transcript ("AT") 25, 217-233. Plaintiff alleged she was unable to work due to lupus, fibromyalgia, neuroma, joint pain, stiffness and swelling, chest pain, fatigue, muscle knots, cramping,

weakness, balance problems, brain fog, shortness of breath, pain and swelling in the right foot, and difficulty sleeping. AT 132. In a decision dated January 26, 2017, the ALJ determined that plaintiff was not disabled.[1] AT 25-39. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since December 29, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: obesity, fibromyalgia with headaches, sleep apnea, and recurrent allergic rhinitis.

---

[1]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except that she is able to lift and carry 10 pounds frequently and 20 pounds occasionally; she is able to sit for about six hours of an eight-hour workday; she is able to stand and/or walk for about six hours in an eight-hour workday; she is precluded from climbing ladders, ropes, and scaffolds; she is precluded from working around unprotected heights and hazardous machinery; she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme cold/heat, and extreme humidity; she is able to perform frequent fine and gross manipulation; she is limited to occasional stooping, kneeling, crouching, and crawling.

6. The claimant is capable of performing past relevant work as a management trainee and fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2014 through the date of this decision.

AT 27-38.

The ALJ also made alternative step five findings that, considering the claimant's age, work experience, and residual functional capacity ("RFC"), there were other jobs that exist in significant numbers in the national economy that the claimant also could perform. AT 37. Based on the testimony of the vocational expert, the ALJ determined that plaintiff could perform the requirements of representative occupations such as cashier, storage facility rental clerk, and cafeteria attendant. AT 37-38.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the medical evidence; (2) the ALJ improperly discounted plaintiff's subjective testimony; (3) the ALJ improperly discounted third party statements; and (4) the ALJ's questions to the vocational expert did not include all plaintiff's limitations.

////

////

3

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Evidence

Plaintiff contends that the ALJ's determination that she could perform light work was "based on the erroneous rejection of Dr. Ferrari's opinion." (ECF No. 11-1.) Plaintiff further contends that the ALJ rejected "all medical opinions of record" without explanation, such that the RFC is not supported by substantial evidence. (Id.)

////

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Albert Ferrari, plaintiff's treating rheumatologist, examined her on the alleged disability onset date of December 29, 2014, when she presented with complaints of "total body pain," stiffness in the morning, and joint pain.  AT 31, 324.  "Objective findings included tenderness in the left hand, both knees, and lumbar and cervical spine.  No abnormal findings were noted with the eyes, neck, chest, heart, or abdomen.  Pain medication was prescribed and the claimant was discharged in stable condition," the ALJ wrote.  AT 31; see AT 332-324.  Similarly, when plaintiff sought medical care for a urinary tract infection roughly two weeks later, on January 15, 2015, providers documented normal examination findings for her neck, respiratory,

cardiovascular, abdominal, back, and neurological systems, including normal ranges of motion and non-tender extremities and abdomen. AT 31, 459-460.

On May 5, 2015, Dr. Ferrari filed out a Fibromyalgia Residual Functional Capacity Questionnaire for plaintiff. AT 501-507. Reviewing this opinion, the ALJ wrote:

> Dr. Ferrari reported that the claimant suffered from pain in the lumbar spine, cervical spine, thoracic spine, chest, shoulders, arms, and hips. He further found that the claimant was incapable of even low stress jobs. Functionally, Dr. Ferrari found that the claimant could sit, stand, and walk each for less than two hours in an eight-hour workday. He further indicated that the claimant could occasionally lift 10 pounds, rarely twist, stoop, and climb stairs, and never crouch or climb ladders. With regard to reaching, grasping, and fine manipulation, Dr. Ferrari reported that the claimant could only do these tasks for 25 percent of an eight-hour workday.

AT 35; see AT 501-507.

The ALJ continued:

> This opinion is given little weight because it is inconsistent with the medical evidence, which shows that the claimant displayed normal ears, nose, and throat, a supple and non-tender neck with full range of motion, clear lungs, normal breath sounds, a regular heart rate and rhythm, normal heart sounds, a soft and non-tender abdomen, a normal back, no costovertebral angle tenderness, normal skin, non-tender extremities with normal range of motion, intact sensation, good coordination, intact cranial nerves, no back spasm, no lumbar tenderness, normal back range of motion, and a normal gait.

AT 35. The ALJ cited November 19, 2014 medical notes documenting normal examination results except for trapezius muscle tenderness (AT 31, 35, 340-344, 413-417); April and May 2015 medical notes documenting largely normal examination results except for, e.g., point and lumbar tenderness (AT 32, 35, 424-440); and normal findings at a January 15, 2015 hospital visit (AT 453-460). The ALJ also cited July 29, 2015 medical notes (AT 33, 35, 508-509) and other 2015 and 2016 records documenting plaintiff's largely unremarkable medical examinations. AT 33, 35; see, e.g., AT 511 (December 2016 record noting "[n]o joint deformity, erythema, or tenderness. Full [range of motion] all joints. Normal gait."), 564 (January 2016 record noting normal systems and range of motion, but costovertebral angle tenderness on right side).[2]

---

[2] Plaintiff cites Russell v. Colvin, 2017 WL 191011, *4 (E.D. Cal. Jan. 18, 2017), where "the ALJ failed to offer any explanation as to why [the examining physician's] opinion was overly

The ALJ also considered the opinions of State agency medical consultants Dr. Trias and Dr. Nasrabadi, both of whom reviewed plaintiff's medical history in 2015.  AT 94-95, 116-117. In contrast to Dr. Ferrari, who opined that plaintiff could not perform even low-stress work and had marked functional limitations, both non-examining physicians "found that the claimant was capable of medium work with no additional postural, manipulative, visual, communicative, or environmental limitations," the ALJ noted.  AT 36.

While the ALJ rejected Dr. Ferrari's opinion for being too restrictive, she rejected the State agency physicians' opinions for failing to take into account plaintiff's documented health problems.  The ALJ found Dr. Trias's and Dr. Nasrabadi's opinions "inconsistent with the medical evidence, which shows that the claimant suffered from trapezius muscle tenderness, impaired ability to lift, limited mobility, decreased back range of motion, lumbar tenderness, episodes of congestion, sinus pain, a runny nose, headaches, and fever, and tenderness in the left hand, both knees, and lumbar cervical spine."  AT 36, citing AT 323-324 (January 2015 examination notes of tenderness of the spine and musculature), AT 340-344 (November 2014 treatment notes for back and neck pain), 384-399 (April 2015 functional capacity evaluation by physical therapist Kim Paustenbach), and AT 418-441 (hospital treatment notes).

The ALJ concluded the RFC analysis as follows:

> In sum, the medical evidence shows that the claimant suffers from physical impairments that produced trapezius muscle tenderness, impaired ability to lift, limited mobility, decreased back range of motion, lumbar tenderness, episodes of congestion, sinus pain, a runny nose, headaches, and fever, and tenderness in the left hand, both knees, and lumbar cervical spine.  [Record citations.] However, the objective medical evidence, the claimant's reported daily activities and testimony, and medical opinions discussed above, indicate that the claimant's intensity, persistence and limiting effects of these symptoms are not as restrictive on the claimant's capabilities, as alleged.  Therefore, while these symptoms do limit functionality, the record, considered as a whole, supports a finding that the claimant has the residual functional capacity to perform light work [with certain limitations].

AT 36.

---

restrictive in light of the evidence in the record[.]" The instant case is distinguishable as the ALJ provided such an explanation.

Based on the foregoing, the ALJ gave specific and legitimate reasons for discounting both Dr. Ferrari's highly restrictive opinion and the State physicians' minimally restrictive opinion as to plaintiff's ability to perform work-related functions. The ALJ reviewed and cited medical evidence showing that, while plaintiff's examination results were often normal and unremarkable, her treatment and examination record reflected some positive findings. The ALJ was not required to adopt any one medical opinion, but appropriately resolved conflicts in the opinion evidence with reference to the objective record. See Chao v. Astrue, 2012 WL 868839, *11 (E.D. Cal. Mar. 13, 2012) (ALJ "was entitled to draw from all the medical evidence in the record, including portions of the diametrically opposed functional limitations posited by Drs. Lu and Selcon, in order to resolve conflicts in the medical evidence."); 20 C.F.R. §§ 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as ... your residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner").

The undersigned finds no error in the ALJ's evaluation of the medical opinions.

B.  Credibility

Plaintiff next asserts that the ALJ erred in discounting her subjective complaints in determining RFC. The ALJ concluded that plaintiff "has described daily activities and exhibited behavior that is inconsistent with the claimant's allegations of disabling symptoms and limitations. Additionally, the objective medical records do not completely corroborate her statements and allegations regarding her impairments and resultant limitations." AT 30; see 36 (excerpt above).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341,

344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ recounted plaintiff's statements and hearing testimony that her impairments caused fatigue, joint pain, shortness of breath, musculoskeletal pain, impaired sleep, stiffness, decreased mobility, back and foot pain, and problems using her hands, among other problems.  AT 30.  At the hearing, for example, plaintiff testified that she had pain in her back, joints, and "every single part of my body" and that "the pain never goes away."  AT 64.  "However, the claimant further testified that she helped care for her son, shopped for groceries, and prepared meals.  Despite the claimant's symptoms, the claimant reported that she did her own grocery shopping, and drove a car."  AT 30; see AT 56-57, 76, 259-261.  "Additionally, medical records indicate that the claimant was walking daily."  Id., citing AT 684 (July 2016 medical note that plaintiff was walking three-quarters of a mile daily).  Plaintiff points out that she qualified these

statements about her daily activities, noting that she did them on "good days," took breaks as needed, and received help from her adult daughter.  <u>See</u> AT 56-57.

The ALJ also summarized the medical record, which, as discussed above, indicated numerous unremarkable findings as well as some positive findings.  <u>See</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1176 (9th Cir. 2008) (ALJ did not err in discrediting claimant's testimony when the alleged severity of her symptoms was "disproportionate and not supported by the objective medical findings nor any other corroborating evidence" and the record reflected claimant performed "normal activities of daily living").

Plaintiff asserts that the ALJ failed to properly evaluate her fibromyalgia-related symptoms under Social Security Ruling 12-2p and <u>Revels v. Berryhill</u>, 874 F.3d 648 (9th Cir. 2017).  SSR 12-2p provides guidance on evaluating a disability claim involving fibromyalgia. Under SSR 12-2-p, an ALJ evaluates a claimant's statements about her symptoms and functional limitations by following the two-step process set forth in 20 CFR § 404.1529.  First the ALJ must consider whether the claimant's statements about her symptoms are consistent with the "medical signs and [laboratory] findings" of record.  SSR 16-3p.  If the objective medical evidence does not on its own compel a finding of disability, the ALJ must consider the evidence and the factors set forth in 20 C.F.R § 404.1529, including the claimant's daily activities.  <u>Id.</u>

Here, the ALJ found plaintiff's fibromyalgia to be a severe, medically determinable impairment that limited her ability to perform basic work activities.  AT 27.  The ALJ then considered whether plaintiff's alleged symptoms and limitations were consistent with the medical evidence and other evidence in the longitudinal record from 2014 to 2016, pursuant to section 404.1529.  <u>See Revels</u>, 874 F.3d at 657 (reasoning that the longitudinal treatment record is relevant to assessing functional limitations arising from fibromyalgia).  Following a detailed breakdown of the medical evidence, including sometime findings of muscle tenderness and point tenderness (AT 31-34), the ALJ concluded that plaintiff's fibromyalgia and other impairments could reasonably be expected to cause "trapezius muscle tenderness, impaired ability to lift, limited mobility, decreased range of motion, lumbar tenderness, . . . and tenderness in the left hand, both knees, and lumbar cervical spine."  AT 34.  However, the ALJ determined that the

claimed severity of these impairments was "not entirely consistent" with the longitudinal record.
AT 30. "[W]hile these symptoms do limit functionality, the record, considered as a whole,
supports a finding that the claimant has the [RFC] to perform light work[.]" AT 36.

The court finds no error in the ALJ's consideration of the evidence as it related to
fibromyalgia. As the ALJ used the proper process and provided proper reasons, the court defers
to the ALJ's credibility determination.

C. Third Party Statements

Plaintiff asserts that the ALJ failed to properly assess an April 2015 functional capacity
evaluation by physical therapist Kim Paustenbach. The ALJ summarized this report, noting that
during the testing, plaintiff

> demonstrated the ability to sit for 20 minutes, stand for five to eight
> minutes, walk continuously for five minutes, and intermittently
> stand, sit, and walk for 90 minutes. Additionally, the claimant
> displayed the ability to lift 10 pounds from waist to shoulder and zero
> pounds from floor to waist and floor to shoulder on an occasional
> basis. The claimant was also unable to crouch or squat or lift from
> the floor.

AT 23, citing AT 384-399. The ALJ also cited Ms. Paustenbach's report in the RFC analysis as
evidence that plaintiff had impaired ability to lift, limited mobility, and other physical limitations.
AT 36, citing AT 384-399.

Chiropractors and physical therapists are not acceptable medical sources who can give
medical opinions. See 20 C.F.R. § 404.1513(a). The ALJ may evaluate opinions of other medical
sources using the same factors applied to evaluate medical opinions of acceptable medical
sources. SSR 06-03p. But the ALJ may give less weight to opinions of other medical sources than
to those of acceptable medical sources. Id. The ALJ must give specific, germane reasons for
rejecting opinions from other sources that are not acceptable medical sources. Dodrill v. Shalala,
12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ rejected Ms. Paustenbach's report insofar as the RFC was less restrictive
than Ms. Paustenbach's findings. The ALJ did not give specific reasons for rejecting this
functional capacity evaluation. However, in his May 2015 physical RFC assessment, Dr. Ferrari
incorporated Ms. Paustenbach's findings of one month earlier. In fact, Ms. Paustenbach assisted

in completing the May 2015 report, filling in the sections pertaining to plaintiff's functional limitations. AT 503-506. As discussed above, the ALJ gave specific and legitimate reasons for discounting Dr. Ferrari's (and Ms. Paustenbach's) May 2015 opinion. Any error in not assigning weight to Ms. Paustenbach's earlier report was harmless, because the functional limitations she identified were also included in the May 2015 report. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"); Rogal v. Colvin, 590 F. App'x 667, 670-671 (9th Cir. 2014) (where ALJ considered but "did not expressly state what weight she assigned to" physician's opinion, any error was harmless because ALJ discussed and gave significant weight to another doctor's opinion, which relied on first doctor's opinion).

Plaintiff next argues that the ALJ failed to sufficiently explain why she rejected the lay witness statement of plaintiff's daughter, Gabriela Aguilar, who stated that plaintiff experienced frequent pain, had to take breaks during her daily activities, and had trouble sleeping. See AT 308-309. Considering this statement, the ALJ wrote:

> The undersigned has considered this statement in terms of helping to understand the severity of the claimant's various symptoms over time as explained in SSR 06-03p (also see 20 CFR 404.1512 and 416.912). However, the lay opinions therein do not amount to evidence that would change the determinations made in this decision according to SSA regulations. Therefore this statement is given little weight with respect to assessing the claimant's functional limitations.

AT 35.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill, 12 F.3d at 918-19 (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050, 1056 (9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony,

12

could have reached different disability determination). Moreover, "the reasons 'germane to each witness' must be specific." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout</u>, 454 F.3d at 1054).

Here, the ALJ determined that the limitations set forth by Ms. Aguilar did not change the RFC based on the overall record. While the ALJ expressly considered this third-party statement, she did not provide specific reasons for discounting Ms. Aguilar's testimony about the severity of plaintiff's symptoms and functional limitations. This was error.

The next question is whether the ALJ's error was harmless. <u>See</u> <u>Stout</u>, 454 F.3d at 1056. Ms. Aguilar's testimony about plaintiff's daily functioning was very similar to plaintiff's testimony, e.g., that plaintiff experienced pain and fatigue during her daily activities and had to take breaks, that plaintiff's daughter helped her with housework, and that plaintiff could walk for fifteen or twenty minutes without a break. AT 56-57, 68, 259-260; <u>compare</u> AT 308 (Ms. Aguilar's testimony that plaintiff could walk for thirty minutes). The ALJ found plaintiff's subjective testimony less than fully credible, as discussed above, and found both plaintiff's and Ms. Aguilar's testimony consistent with an RFC for light work when considered with other record evidence. Given that Ms. Aguilar's testimony added little to plaintiff's subjective statements, the court concludes the ALJ's error was harmless because, even crediting Ms. Aguilar's statements, no reasonable ALJ would have reached a different disability determination.

D. <u>Vocational Expert</u>

Finally, plaintiff asserts that the ALJ failed to pose a complete hypothetical question to the vocational expert that included all of the limitations supported by the record. The ALJ's question to the VE relied on the RFC assessment. AT 83. Because plaintiff has not established that the RFC was erroneous, as discussed with respect to the above claims, plaintiff does not show error on this basis.

////

////

////

////

13

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 11) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  February 7, 2019

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/morales2246.ssi.ckd

14